# CHARLESTON.

CHARLES L. SNODGRASS v. J. TURNER KOEN *et al.*

Submitted April 9, 1918.　Decided April 25, 1918.

MINES AND MINERALS—*Conveyances*—*Fee.*

> Where there is a prior oil and gas lease in the usual form upon
> a tract of land, and the lessor by deed grants to another all the
> royalty interest in the oil and rentals from gas wells, and in addi-
> tion confers upon him exclusive authority to drill for oil and gas
> after the termination of the prior lease without restriction or
> limitation upon the exercise of such right, the deed vests in the
> grantee the fee simple title to the oil and gas in place in the land.

Appeal from Circuit Court, Wetzel County.

Suit for partition by Charles L. Snodgrass against J. Turn-
er Koen and others.　Demurrer to bill sustained, and plain-
tiff appeals.

*Affirmed.*

*Glen Snodgrass,* and *C. A. Snodgrass,* for appellant.

*W. S. Meredith,* for appellees.

LYNCH, JUDGE:

Claiming title to seven-eighths of the oil and gas contained
within a tract of fifty-six acres of land, part of a tract of
sixty-nine acres jointly owned by Daniel S. Remley and his
wife, Mary A. Remley, in Wetzel County, and conceding to
the defendants title to the other one-eighth, plaintiff brought
this suit for the partition by a sale of the minerals and di-
vision of the proceeds in the foregoing proportions; and being
denied relief upon demurrer to the bill, he prosecutes this
appeal.

The Remleys leased the sixty-nine acres to Samuel S. Tea-
garden July 10, 1894, to explore for, and if found to pro-
duce, oil and gas upon the usual terms and conditions reserv-
ing to themselves one-eighth oil royalty and $200 annually
for each gas producing well drilled, if the gas be marketed off
the land; requiring the drilling of a well within one year and
if not so drilled the payment of an annual rental of sixty dol-

lars in lieu of drilling until a well was completed or the lease surrendered for cancellation. This lease Teagarden assigned to the defendant, A. Jackson Hays, March 1, 1895. Four days later the Remleys executed to J. T. Koen, Hays and Teagarden a deed granting to them jointly for fifty dollars one-eighth part of the oil and gas underlying and that may be produced from the sixty-nine acre tract with this provision: "If the said land is not operated under the lease now on the same land the said second parties (the grantees) are to have the rights to operate the said land and if the lease now on the said land is surrendered then the parties of the first part do grant unto the second parties the right to operate the same land on this lease and deed royalty and no one else to have the right to lease or operate the same."

Daniel S. Remley, who died sometime in 1895, devised his moiety interest in the sixty-nine acres to his wife, Mary A. Remley, whereby she became the sole owner of the tract, and April 1, 1896, conveyed 13½ acres, part thereof, to J. W. Roberts, and June 25, 1903, the residue, which by survey was ascertained to be 56 acres, to Zora Cox, who, having intermarried with Edward T. Beatty, united with him March 11, 1913, in a deed for the fifty-six acres to W. G. Snodgrass, through whom plaintiff on August 5, 1916, acquired such title in the oil and gas in the fifty-six acres as he now seeks to have partitioned in this suit. In the meantime—to be exact, on January 25, 1899—Mrs. Remley executed to the Philadelphia Company of West Virginia, a corporation, a lease in the usual form and with the usual reservation of the one-eighth royalty and gas well rentals for the production of oil and gas upon the fifty-six acres.

No tests have been made to discover the presence of oil or gas on any part of the tract, either under the authority of the lease to Teagarden or to the Philadelphia Company or of the grant to Teagarden, Hays and Koen or any other person under any lease or by either of the Remleys. The deed of Mrs. Remley to Zora Cox was made and accepted upon the understanding and agreement "that as the party of the first part and her late husband having conveyed by deed certain coal, oil and gas rights in the land, the same is hereby ex-

cepted from this conveyance so far as they are conveyed by a valid conveyance." As these deeds and leases were admitted to record and recorded in the proper office of the county in which the land lies with reasonable promptness, they operated as constructive notice of their contents and provisions to purchasers proposing to deal or treat with the consecutive owners of the land conveyed or encumbered.

The plaintiff must therefore be presumed to know what an examination of the public records would disclose, if diligently pursued, as to the title on which he relies to entitle him to relief by partition of the oil and gas he claims to own under a grant through Mrs. Remley's grantees. He must be charged with the information which an inspection of such records would have imparted to him, had he resorted thereto to ascertain what they revealed as regards the subject matter of the conveyance upon which he predicates his right to relief in this proceeding. He would have ascertained, and it is presumed did ascertain, when he procured the deed which purports to vest in him title to the seven-eighths of the oil and gas in the fifty-six acres, the conditions, limitations and restrictions imposed by each deed or grant in devolution of the title under which he claims. The grant from the Beatties to W. G. Snodgrass, his grantor, advised him unequivocally that the grantors in that deed expressly excepted the oil and gas interests conveyed by the Remleys to Koen, Hays and Teagarden, March 5, 1895; as did also the grant by W. G. Snodgrass to the plaintiff, although it does purport to confer upon the plaintiff the same exclusive right to drill and operate on the fifty-six acre tract for the seven-eighths of the oil and gas as the Remleys conferred upon Koen and his co-grantees.

Apparently much if not decisive and controlling weight in determining the merits of this controversy is to be given to *Garrett* v. *South Penn Oil Company*, 66 W. Va. 587, since counsel representing the adversary contentions either rely on that case or deny its applicability to the facts averred and admitted on demurrer; the plaintiff, to support his contention that, granting full force and effect to the conveyance of the Remleys to Koen and others in 1895, the failure of the grantees to enter upon the land to exercise the rights so conferred,

continued from the date of the grant to the institution of this suit, all rights thereunder are barred at law by statute and in equity by laches; and the appellees, that the observation in the opinion in the Garrett case, "search ought to be made in a reasonable time", fixing such time as three or four months from the date of the instrument, and that the rights of the grantees were liable to be forfeited for non-entry or lost by surrender or abandonment, evidenced by their failure to enter or pay rentals or commutation money, is inapplicable to and not controlling upon the facts of this case.

There is this difference between the grant of the Nutters to Garrett and the grant of the Remleys to Koen and others; the first was of one-sixteenth of the oil, the second of one-eighth of the oil; and each was made subject to a prior lease and was to operate as a lease in the event the former lease lapsed or thereafter became invalid for failure to enter and drill for any other reason. If the Remleys chose to devest themselves of all their royalty interest in the oil and rental rights in the gas within the sixty-nine acres for a valuable consideration, who but they can be heard to complain either of the devestiture or the delay in exercising the rights they voluntarily and deliberately elected to confer upon their grantees? To this question the appellant replies that the lease to the Philadelphia Company by Mrs. Remley after she became the sole owner of the property operated to annul the lease privileges granted jointly by herself and husband in his lifetime to Koen and others; but to this it may be replied, (1) that the second lessee refused, or, if he did not refuse, failed for some reason not disclosed and not apparent to enter upon the land and produce oil and gas under the authority of that contract; and (2) that Mrs. Remley, as such sole owner, elected for reasons satisfactory to her to recognize as valid and binding the conveyance by herself and husband to Koen and others in her deed of conveyance subsequently made to Zora Cox, as also did the latter, as Mrs. Beatty, in her deed to plaintiff's grantor. Whatever may have been the effect or the intention of the Philadelphia Company lease upon the rights conferred by the grant to Koen and others or the intention and purpose of Mrs. Remley in executing that lease, certainly

she had the legal right afterwards upon the termination of that lease, however occurring, to recognize, ratify and confirm the earlier contract of herself and husband, and that is what we think she undertook to do and did by her deed to Zora Cox.

This is merely by way of answer to the amended bill and argument by the plaintiff upon the question of abandonment of the right of exploration upon the land under the lease provisions of the grant of the Remleys in 1895 and not as decisive of the case upon its merits. For, as said heretofore, what matters it, so far as plaintiff or anyone else is concerned, whether the grantees in that deed have been diligent or negligent in taking advantage of its provisions? The grantors substituted the grantees in their stead and clothed them with all the rights, powers and privileges they possessed as to the oil royalties and gas rentals and the right to lease the land for oil and gas. As no one rightly could interfere because of the delay of the Remleys to exercise their rights, had they remained the owners of these mineral rights and estates, by what authority can plaintiff complain of the delay of their grantees in whose stead they were substituted by the deed of 1895? Relative to these substances, their rights and privileges were as absolute and unconditional as were the rights and privileges of their grantors. What the Remleys could have done or refrained from doing without being called to account for their activity or inactivity, had the deed of 1895 not been made, their grantees could do or refrain from doing with like exemption. It operated as a sale and grant of the oil royalty and gas rental with like effect as if the grant were of the oil and gas itself. *Paxton* v. *Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S. E. 472. At the date of the deed of 1895, the Remleys possessed the royalty interest and reversionary right in and to these minerals after the lapse or termination of the lease of 1894. By their deed of 1895, they devested themselves of all the royalty interest and conferred upon defendants the unconditional and unlimited right to operate for oil and gas without restriction of any sort. Thus by necessary implication they conveyed

to their grantees all their rights in the oil and gas, and the subsequent lease and deed passed no interest whatsoever.

Wherefore our opinion is to affirm the decrees dismissing the bills upon demurrers thereto.

*Affirmed.*